Appellant Steve Spiess Construction, Inc. v. L.J. Keefe, Co., Appellant Steve Spiess Construction, Inc. My name is Steve Wolf and I represent the Appellant Steve Spiess Construction in this matter. I would briefly like to review the facts just to refresh everyone's memory as to exactly what this case is about. I won't spend very much time on it. This case involved an accident involving electrocution to the plaintiff. He was working on a construction site. My client, Steve Spiess Construction, was the general contractor. The plaintiff's employer was the third-party defendant's employer. This case was tried a year ago in May of 2014 before Judge Doherty. Due to some evidentiary issues, Judge Doherty bifurcated the underlying case between the plaintiff and my client and the contribution action between my client and the employer. The cases were tried for the same jury consecutively. I think only one additional witness was called. The jury returned the verdict in favor of the plaintiff and then we proceeded with the contribution action. At the close of the evidence in the contribution action, I moved for a directed verdict on the employer's affirmative defense asserting Pateki, which limits the amount of contribution to which the employer is exposed. Judge Doherty denied that motion. I received a verdict in the contribution judgment of 50% contribution against the employer. I then asked Judge Doherty to enter a judgment in the full amount based upon the fact that the workers' compensation case had not yet been completely resolved and the employer's attorney, Mr. Hines, was unable to advise the judge the exact amount of the lien. Judge Doherty allowed me to enter a judgment order for approximately $375,000, which represented 50% of the gross judgment at that time. Subsequently, Mr. Hines or the employer filed a post-trial motion indicating that the workers' compensation claim had been fully resolved, seeking to waive their lien, thus dismissing the contribution action. And that was the posture in which these motions were argued. As I said in my brief, and I would like to focus on our first argument, that's really the primary argument in this case. I do have follow-up arguments in the alternative. Unless the Court has some questions about those other arguments, I think I'm going to focus my comments on the primary argument. Judge Doherty, in the underlying case, denied my motion for a direct verdict based upon what I believe is a mistaken belief that the Catechi defense is not an affirmative defense. And he relied upon the First District case of Kim v. Albee, which was decided by the First District in 2001. Kim v. Albee does, in fact, stand for the proposition that Catechi is not an affirmative defense and does not need to be affirmatively pled and proven at the time of trial. My position is that the appellate court in the First District was wrong in Kim v. Albee. Before I discuss the holding in Kim v. Albee, however, I would like to discuss the Supreme Court's holding in Lefebvre v. Kemmleit because it is that decision that the court in Kim v. Albee based its decision on. If we look at the decision in Lefebvre v. Kemmleit, it's very important to note that the issues that we're here to address today were not raised in the Lefebvre case. What happened in Lefebvre is we have a plaintiff suing a direct defendant who third-partied in the plaintiff's employer. Very similar scenario in terms of the parties in the case. In that case, the plaintiff won, received the judgment, and the third-party plaintiff received the judgment in its contribution action against the employer. In that case, however, after that judgment, the employer sought to waive its lien, pursuant to Lanham v. Costco, which came down shortly after the Kotecki case, thereby obviating the need to satisfy the contribution judgment based upon the holding in Lanham v. Costco, which says if you waive your lien, you're entitled to a dismissal of the contribution action. So Lefebvre did, in fact, stand for the proposition that a party could waive their lien after a judgment in order to dismiss the contribution action and obviate the need to satisfy the contribution judgment. Lefebvre stood for that proposition. It's true. What we don't know about Lefebvre and what Lefebvre did not discuss or address in any way is what happened during the trial regarding the third-party complaint in the Kotecki defense. Lefebvre doesn't discuss at all whether Kotecki was asserted as an affirmative defense during the tenancy of that case. It doesn't discuss whether the third-party defendant proved up its affirmative defense of Kotecki, thus satisfying the obligation to prove its affirmative defense. It doesn't state whether it was even an issue or it was contested or it was stipulated to. We don't know what happened during the trial regarding the affirmative defense of Kotecki. It's not addressed. The only thing Lefebvre stands for is you can waive your lien, thus necessitating a dismissal of the contribution action after a trial. The presumption exists, I submit, that in order to waive your lien, in order to avail yourself of the right to dismiss the contribution action, that right has to still exist. You still have to have the right to waive your affirmative defense, your Kotecki, I'm sorry, strike that, you still have to have a right to waive your lien in order to achieve a dismissal of the contribution action. If that right isn't available for whatever reason, it wasn't proven, it wasn't asserted, then that right doesn't exist. So the question now becomes, did the court in Kim v. Albee go too far? So they're saying conceptually that you can't exercise the right to waive your lien unless you affirmatively claim it, right? Yes. As in the defense. Yes, Your Honor. And what Kim v. Albee says, they came to the ultimate conclusion, and Lefevre did not stand for this proposition. It's not in the case at all. What Kim v. Albee says, it goes farther and says that Kotecki is not an affirmative defense. It does not need to be affirmatively pled. That's what they took from the Lefevre decision, although the Supreme Court didn't address that at all in Lefevre. What we're really, Kim, is saying they're trying to fill in the blank of Lefevre, and they filled it in with saying it's really just under the Comp Act. It's a settle. They're making a leap, Your Honor, that is not done by the Supreme Court in Lefevre. And if the only argument I had here today was the court in Kim v. Albee went too far, my position might be tenuous. But I have much, much more than that in my favor, Your Honor. If we go back as far as Doyle v. Rhodes, the logic for allowing contribution actions to exist amongst employers based upon the fact that they're joint tort accusers because an employee can sue its employer because the exclusive remedy must be asserted as an affirmative defense. That's really the genesis of this whole argument if you go back to the Workers' Compensation Act in Section 5 and Section 11, which was what the Supreme Court relied upon in Doyle v. Rhodes. But we know in a whole series of cases, Bray v. Archer Daniels Midland talked about the fact that Kotecki is an affirmative defense that must be asserted. We've got a variety of cases in the 5th District. Harrington v. Alberici explicitly stated that Kotecki is affirmative and must be pled and must be proven. The 2nd District in Pevelage v. All-Americans said the same thing, is an affirmative defense that must be pled and must be proven. Christie Falls in the 4th District in 2000, as I already said, Bray v. Archer Daniels Midland. And most significantly, if you look at the Supreme Court's decision in Virginia surety, which was decided in 2007, 6 years after King v. Albee, again reasserts the proposition that Kotecki is an affirmative defense that must be proven. As we pointed out in our briefs, if you do a legal search and you construct your search asking to pull up any case that has the phrase affirmative defense of Kotecki in the same paragraph, 26 non-Rule 23 decisions come up. 26. 25 of them say that Kotecki is an affirmative defense. One says it is not, and that's Kim v. Albee. And Kim v. Albee bases its entire logic on its interpretation of Lefevre v. Kenlight. And Lefevre v. Kenlight just doesn't go that far. The only proposition that we can fairly say that Lefevre stands for is you can waive your lien after a trial. It doesn't address whether that lien was established, I'm sorry, whether the affirmative defense was established at trial, whether it was an issue, whether it was waived, whether it was stipulated to. The other thing about Lefevre is it was not a case where the third-party plaintiff was contesting this at all. This was a case, Lefevre, it was completely different in that it was a case where the plaintiff was asserting that the employer couldn't waive their lien after trial. And the reason for that is the plaintiff was simply trying to get that set-off reduced by the 25% fee that was at issue. That was the whole genesis of Lefevre, is plaintiff's counsel wanted a credit for the 25% of the $222,000 lien, and by allowing the employer to waive it, as opposed to satisfying the contribution judgment, the plaintiff's attorney didn't get the benefit of that 25% reduction. And the court in Lefevre said, you don't get it because they never got their lien back. And if you don't get your lien back, then Section 5B of the Workers' Comp Act hasn't literally been satisfied and you don't get the 25% reduction. So the whole set-up of Lefevre was completely contrary to the position that existed in Kim v. Albee and the position that exists in this case. We know that Kateki has repeatedly been referred to, all the way back to Landon v. Cosco, Bray v. Archer Daniels Midland, and all the other cases, Harrington, Pavlovich, Christy Foles, all of these cases have squarely addressed the issue of whether it's an affirmative defense, and they have all unanimously come to the same conclusion, it is an affirmative defense. So if it's an affirmative defense, we know, black-letter law in Illinois, it has to be proven. The party asserting the defense has an obligation to prove it. In this case, not only was there not one shred of evidence introduced, either in front of the jury or outside the presence of the jury, which would likely have to have been done, but no witnesses were disclosed. Pursuant to Supreme Court Rule 213, the employer didn't disclose any evidentiary documents or testimonial witnesses' identities that were going to testify about what the lien was, whether the lien arose out of the same accident that gave rise to the civil action. There was no disclosure. So even if they tried to disclose it, they couldn't because they didn't disclose the proper witnesses. In order to prove up catechia, I submit that you have to do at least three things. Number one, that there was a cop case filed that arose out of the same accident that gave rise to the civil action, that benefits were paid, and the amount of those benefits. You need to prove up those three things in order to satisfy the burden of establishing that the affirmative defense has been proven. And anecdotally, and I said this during oral arguments on our post-trial motion, I tried a case two weeks after this case where I was in the opposite role. I was the attorney for the employer. And in that case, I had disclosed the insurance adjuster that handled the workers' compensation case to prove up my affirmative defense of catechia. The week prior to trial, I called up the attorney for the plaintiff and the attorney for the direct defendant and said, look, I've got this witness disclosed. I really don't want to bring him in. Will you stipulate that it arose out of the same case, there were benefits paid, and here's the amount of lien? And they said, sure. They stipulated. At the close of all the testimony, I read the stipulation outside the presence of the jury to the judge. I then moved for a directed verdict on behalf of my affirmative defense to find that I had catechia protection. The judge granted it. And I submit that that's the way it needs to be done. It needs to be done so, at the very least, you satisfy your burden. Now, quite often, I try a lot of these cases, quite often it is not an issue. Nobody's contesting it. It is not stipulated. And it's not an issue. I made it an issue in this case. I moved for a directed verdict. There was no evidence whatsoever submitted. There were no witnesses disclosed that could have produced that evidence. And simply stated, my motion for a directed verdict should have been granted by the trial judge because it wasn't proven. Therefore, catechia was not available to the employer after the trial was over because there was no evidence to satisfy the duty to prove up the affirmative defense. If you follow the logic of Kim versus Alvey, I lose. I'll concede that. But as I've argued in my briefs and as I submit to you today, Kim versus Alvey takes Lefevre way too far, as Justice Holdridge indicated. They filled the blank in wrong, without sufficient information. They extrapolated a conclusion that was not addressed in Lefevre. And the underlying facts necessary to fill in that blank, we don't have from Lefevre. We don't know whether they stipulated to Kentucky that it applied. We don't know whether the direct defendant made an issue of it. We don't know whether they proved it. We don't know because it's not discussed. It wasn't an issue. And when the appellate court in the first district filled in that blank without that information, they went too far. And it was contrary to cases that went back all the way to Leonard versus Cosco and Bray versus Archer, Daniel, Midlands in 1996 and Pavlich and Harrington and all those other cases that have for years and years and years clearly established that Kentucky was an affirmative defense. They filled in the blank without doing any analysis, without considering these other cases, without explaining them away, without distinguishing them. And it was just unsupported by Lefevre and clearly contrary to an enormous volume of case law. My motion should have been granted that Kentucky should not have been available to L.J. Keefe after the trial was over. They should not have been allowed to waive the lien and dismiss the third-party action. And my client is entitled to the full amount of contribution that was awarded by the jury because the dismissal was based upon an invalid premise, that being that Keefe had no obligation to prove up its affirmative defense, even though they had pled one. They clearly pled one. They clearly, when they filed their answer to the third-party complaint, believed it was necessary to plead an affirmative defense because it was pled. And now the position is it's not an affirmative defense, based upon Judge Dougherty's decision, of course. But even counsel for L.J. Keefe, at the time they filed their answer to the third-party complaint, pled that Kentucky has an affirmative defense. So it was in play. It wasn't until Judge Dougherty ruled that it didn't need to be that L.J. Keefe now takes the position that it's not an affirmative defense. So I submit that the overwhelming body of case law supports my position. The only case, which I will call a rogue case, to the contrary, is Kim v. Alvey, and it's clear that the logic of Kim v. Alvey did not follow logically the ruling in Lafever. Thank you. Thank you. Mr. Hines? Good afternoon.  Thank you, Your Honor. Mr. Wolf? Well, as Mr. Wolf discussed, there is an issue here with affirmative defense, and I believe that after the Lafever case, Lafever kind of changed the landscape a little bit here. Lafever comes out and says, hey, look, you as an employer can take this workers' compensation lien and you can agree to waive it post-trial. I think that changed the landscape here in that it allows for the employer to wait until verdict and then decide whether or not they're going to waive their lien or not. Kim v. Alvey saw that. Whether they took into consideration some of the things Mr. Wolf has no idea, he has no idea. But what Kim v. Alvey says is, well, it's akin to a set-off anyway. You've got workers' comp payments that have been made, and the employer is allowed to use that as a credit against any verdict potentially against him as long as he hasn't waived that right in some sort of a contract. We had a contract here with Spees. There was no language in that contract that waived the Kotecki provision, unlike so many other contracts that I'm sure both he and I have seen. So the employer didn't waive it. So we come in front of Judge Doherty after post-verdict and have a post-trial motion which delineates the amount of the workers' compensation lien that's paid, also advises the court that the comp case had been settled and asked for a dismissal of the contribution claim that was filed against me. I think that Lefever allows that. Judge Doherty agreed. I think Alvey v. Kim also allows that. So the basis, I think, of our ability to do that, I think, is structured in law and structured in those cases. The other thing I want to talk about a little bit is about what I think the problem is. It's not necessarily whether it's an affirmative defense or not, but it's also how do you prove it? What steps are required to show the court what has been paid and what hasn't? Clearly this never would have gone in front of the jury. There's no way that I would have presented insurance information, workers' compensation information in front of a jury and had them decide for us how this is going to happen or how this is going to be applied. So it's all going to happen in front of the judge no matter what. I believe that because Lefever said you can do it post-trial, that's what we did. We presented it to counsel, we presented it to the court, and the court agreed this is the amount, this has been fairly proven, and he set the amount of the set-off that was applied to the verdict and then dismissed the contribution claim. And I think that's exactly what should have been done in this case. I guess that's basically what I have to say. Well, what about this argument of opposing counsel about affirmative defense? I mean, so you can prove it. You're saying you can do all of it. Well, you pledged it, though, didn't you? It was pledged, Your Honor. And, frankly, all the pundits say you should do that just to cover yourself. So it was pledged. But you're saying it's not necessarily required. I don't think it's necessarily required. And I think Albie v. Kim clearly allows, says you don't have to do that. But I think the problem that comes in is, well, what do you need to prove it? I mean, clearly we knew there was a workers' compensation case. We clearly knew that compensation had been paid. So an affidavit was provided to the court from the adjuster who handled the case, pursuant to 191, to give the court the information that it needed in order to determine the amount of the workers' compensation lien and the amount of the credit set-off that would be allowed. What about the opposing counsel's position that Kim v. Albie is this rogue case and that there are cases subsequent in other districts that would take a position which he would refer to as a traditional position? Well, you know, I think all of the vast majority, and the only one is Virginia Surety that I think I've seen that comes after Albie, but those all preceded Lefevre. And I think the problem with that is that because the court in Lefevre allowed this to happen post-trial, that it took it out of that realm of what he's claiming and put it into a situation where you can bring it before the judge post-trial. So I think that those other cases that talk about affirmative defenses were all preceding Lefevre. Then we have Albie after that says, well, you know what? It's a set-off. We're going to say, no, you don't need to do that anymore. What about the other case you did mention? There's a subsequent case. Virginia Surety. It wasn't a part of the holding of the case, but it did talk about Kotecki as an affirmative defense. It did talk about it. But I don't think it's precedential and I don't think it has any precedential value to this case. Mr. Hines, I have a question. I don't know how to frame it, and it's with a little trepidation that I do because I'm confessing ignorance here. But when I was practicing, I thought that Doyle v. Rhodes required you to And then when Kotecki came along, it said that you plead as an affirmative defense still the existence of the workers' compensation claim and that you've done something with it and that what you had to prove in both of those instances was that you were the employer and that you were paying workers' compensation and that that was essentially the proof that had to be done in order to show the affirmative defense of workers' compensation, but that the actual computation of the lien, the amount of the lien, came later and that that was not part of the affirmative defense itself. Apparently that's changed. Is that correct? Well, I don't think it's changed. Now with Kim v. Alvea, it may have been before that that was the case, Your Honor, but I don't think that – I mean, in this case, I think it was pretty clear during the testimony that we proved – the testimony was given that there was employer testimony, it was given that there was workers' compensation case, even though it wasn't supposed to get in, it did get in. Okay. Yeah, to kind of follow up, you're saying Kim v. Alvea changed what Justice McDade was saying was a traditional requirement? Well, yes, I mean, to the extent that it's traditional. I mean, typically when you go in, the employer is being sued because of the employee selected. I don't think that – you know, I think all you have to do, the only affirmative defense that you have to plead is cotechnic. I, to be perfectly honest with you, have never had a case prior to cotechnic to be able to answer your question specifically if it needed to be specifically pled in that case or not. I've never seen it, so I can't really respond to that specifically as to what predated cotechnic. Okay. I guess that what I'm suggesting is that maybe saying that cotechnic is an affirmative defense is using that as a shorthand that goes along with Doyle that says, you know, you have to say I'm going to be relying on the workers' compensation payments that I've made, but that you don't actually have to prove because during the course of this litigation, you would still be paying the workers' comp. Right, and I agree. That's what I think is the case. I think that, you know, it's clear that those payments are being made. I don't think you have to prove that those payments are being made, but I think at some point you have to show what those payments were, and I think by doing that post-trial with the affidavit that we clearly did that. Yeah, I think just Dave's saying that you plead an affirmative defense under cotechnic, but you still have to have some evidence there that you're entitled to that defense. One is a computation and one is a defense to assert the right, the opposing counsel is saying, to assert the right of what ultimately would be a settle, which is the dollar amount. Is that fair? I think that the trial showed that we risked the employer and that there wasn't a compensation case. That's all that ever came out in the trial. It was stopped because technically there was a motion to eliminate, prevent anything being said about workers' compensation or insurance. But it did come out in the trial anyway. So I think that to the extent that if you believe that an affirmative defense was necessary and that those two criteria needed to come out, I believe that it came out in the fact that we were the employer of Mr. Burmeister and that there was a workers' compensation case. And that workers' compensation payments were being made. Yeah. Thank you. Thank you. No, I wasn't excusing you. If you had something else, I was just thanking you for answering my question. That was it. Thank you. Mr. Wolf? Just to follow up on Justice McDay's question, obviously before the Kentucky decision came down, which I believe was in 1991, the issue of whether you had to assert Kentucky on an affirmative defense wouldn't have been raised. However, as Your Honor pointed out, Thoreau v. Rhodes addressed the issue of whether, number one, a plaintiff could sue its employer in a civil case. And the reason for that was to decide whether an employer was subject to contribution because they have to be a joint tortfeasor. And the argument was that if you're not a joint tortfeasor, you're not subject to tort, you can't get contribution from them. But what the court said, and I've been critical of this decision for many years because I think it tortures the logic a little bit, but yet I certainly abide by the Supreme Court's decision. What the court said was, even though the Workers' Compensation Act contains what we call the exclusive remedy provision, that an employee's exclusive remedy for workplace injuries, the workers' compensation benefits, an employer might, for some reason, elect not to assert its right, and therefore an employer is subject to being sued by its employee. I can go out and sue my employer if I'm injured, and then the employer has to avail itself of the exclusive remedy provision by asserting it as an affirmative defense. That's what Doyle v. Rhodes says. When Kateki came down, it didn't necessarily discuss Doyle v. Rhodes, but all the subsequent cases that have come down that I've cited previously went back and said, look, just like in Doyle v. Rhodes, you have to assert the exclusive remedy provision in order to avail yourself of the right to be dismissed, which rarely happens because typically plaintiffs don't sue their employers, but if they do, they would file a motion to dismiss and assert the exclusive remedy provision and get out of the case. What the courts have said is, just like that, just because of the court's analysis in Doyle v. Rhodes, Kateki necessarily must abide by the same rules of construction, and therefore it is an affirmative defense that has to be asserted. And if you go back to Harrington, which is the first case that squarely addressed the issue of whether it was an affirmative defense, which is a Fifth District case, it compared the analysis in Doyle v. Rhodes to the analysis of whether Kateki was an affirmative defense, and clearly said it arises from the Workers' Compensation Act. It must be asserted affirmatively. A party could, for some reason, elect not to assert the Kateki limits and could agree to abide by whatever contribution judgment that was entered. And clearly we again saw that in Bray v. Archer Daniel Midland in 1996 when the court said parties can agree to waive this. Even though it's a defense available to them, they can agree by contract to not assert the Kateki limits because they're agreeing with the context in which it most often comes up is a construction context. A general contractor requires a subcontractor to agree to abide by its full contribution judgment and not avail itself of its Kateki limits. And therefore, that's the whole genesis of this concept of being an affirmative defense. But what do you have to prove? To prove the Kateki defense, what do you have to prove? My position, Your Honor, is you have to prove at least three things. You have to prove that the incident in which the injured party received workers' compensation benefit is the same accident that's at issue in the civil case, so we have a commonality of injury. You have to prove that workers' No, it was not. There was an incidental comment during the trial about workers' compensation. That was it. It wasn't expanded. It wasn't explored. Nothing. Number two, you have to prove how much the benefits were. How can you have a Kateki defense unless you prove what the benefits were? And you have to show that there was an employment relationship. There was clearly shown that there was an employment relationship. That came out. But it wasn't definitively established that the workers' compensation claim arose out of the exact same injury for which the lawsuit was filed or the amount of benefits paid. And the only other comment I'd like to shift a little bit is counsel said that it was proven up after judgment by an affidavit of the adjuster. My problem with that is, number one, that adjuster was never disclosed pursuant to Rule 213, so she shouldn't have been allowed to testify in any context, whether it was affidavit, live testimony, et cetera. There was a 213 violation there. That's the first argument. The second argument is it was done by affidavit, and I objected at the time the motion was brought, pursuant to hearsay. I should have been allowed to cross-examine that person if, in fact, that was being relied upon to prove up the Kateki defense. Number three, the affidavit refers to a printout of workers' compensation benefits that were paid in order to establish the amount. That printout was never attached, was never a part of the record. It's not in the record. If you look at the affidavit and you look at other documents, like the proposed workers' compensation settlement contract, the numbers are inconsistent. And finally, the workers' compensation contract that shows that the case was ultimately settled for $1 was not executed. It wasn't approved. I looked this morning, and I found that that contract was approved, I believe, on November 14th, in November of that year, five months after trial. So the court relied upon a proposed workers' compensation contract that had not yet been executed. It relied upon an affidavit that was hearsay, and I objected to the hearsay nature of it. The affidavit referred to a printout of what the benefits were. The printout wasn't attached. There was inconsistencies. In fact, there's an inconsistency between what's in the workers' compensation computer about what the settlement was for, what the affidavit says, and other references to the amount of the lien. And then my other, my final argument, which I didn't address in my opening comments, are what they should be allowed to waive. They waived this on a $1 contract, even though counsel conceded that the remaining benefits from workers' compensation were substantially more than that. So there are a number of reasons why Kotechi was not proven. Even if the court decides that it could be proven after trial and it's not an affirmative defense and it doesn't have to be proven during trial, it wasn't proven by the standards of evidence to which we're held to. The court relied upon a hearsay affidavit that alleged that there was an attachment which wasn't attached and is not part of the record, an unexecuted, unapproved workers' compensation contract and numbers that were bantered around as to what the lien was were never substantiated, and they're inconsistent. So for all those reasons, even if the court concludes that it is not an affirmative defense, which I submit, pursuant to my prior arguments, there's an enormous amount of evidence in case law to the contrary, but even if the court concludes that it's not an affirmative defense and I suggest the court would be making new law and interpreting new law, it still wasn't proven out based upon the standards to which we're held under the rules of evidence. So for those reasons, I asked the court to reverse the trial court, reinstate the judgment of approximately $375,000 pursuant to the contribution judgment, and make a clear statement that we're going to require that parties abide by the standards which the case law clearly has set, that Kentucky is an affirmative defense, that it has to be proven up, or at the very least, if it's going to be proven up after trial, that it has to be done so by competent witnesses who are properly disclosed and not through hearsay documents. Thank you. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will stand in brief recess for a panel change.